1  **WO**

2

3

4

5

6           **IN THE UNITED STATES DISTRICT COURT**

7            **FOR THE DISTRICT OF ARIZONA**

8

9  David L. Wilson,                    )    No. CV-10-1643-PHX-SMM
                                       )
10           Plaintiff,                )
                                       )
11  vs.                                )    **MEMORANDUM OF DECISION**
                                       )            **AND ORDER**
12                                     )
   Michael J. Astrue, Commissioner of  )
13  Social Security,                   )
                                       )
14           Defendant.                )
                                       )
15  _____

16          David L. Wilson seeks judicial review pursuant to 42 U.S.C. § 405(g) regarding the

17  Commissioner's denial of disability benefits.  (Doc. 1.[1])  Wilson asks this Court to vacate

18  the Commissioner's denial. (Doc. 13.) The Commissioner filed his Answering Brief (Doc.

19  14), and Wilson filed his Reply (Doc. 20).  For all of the reasons that follow, the Court will

20  affirm the Commissioner's denial of disability benefits.

21                          **BACKGROUND**

22          David Wilson was 45 years old when he filed for disability benefits.  Wilson is a

23  college graduate, having earned a degree in Accounting.  (Tr. 30, 144.)  Wilson's

24  employment history shows previous work in various accounting and bookkeeping jobs. (Tr.

25  125-32.)

26  _____

27          [1]"Doc." refers to the documents in this Court's file. "Tr." refers to the administrative
   transcript.  A certified copy of the administrative transcript was provided to this Court by the
28  Commissioner of the Social Security Administration on December 3, 2010. (See Doc. 12.)

1    Wilson filed an application for Social Security disability insurance benefits on

2    February 6, 2007. (Tr. 54.)  Wilson alleged disability on the basis of his asthma, migraine

3    headaches, osteoarthritis of the left knee, impingement syndrome of the left shoulder, and

4    depression. (Tr. 18.)  In his application, Wilson alleged that he became disabled as of May

5    17, 2005. (Tr. 133 (otherwise referred to as "disability onset date").)  His application was

6    denied initially on September 5, 2007, and upon reconsideration on January 17, 2008. (Tr.

7    54, 56-59, 55, 63-65.)   Wilson sought further review before an administrative law judge

8    ("ALJ").   A hearing before the ALJ was held on May 4, 2009.  (Tr. 24-53.)   At the

9    administrative hearing, the ALJ granted Wilson's motion to amend his alleged disability

10   onset date from May 17, 2005, to May 1, 2004.  (Tr. 16.)  At the hearing, Wilson testified

11   as well as did an impartial vocational expert, Nathan Dean.  (Id.)  On June 25, 2009, the ALJ

12   determined at step four that Wilson was not disabled for the purpose of receiving disability

13   insurance benefits because he was able to return to his previous line of work as a

14   bookkeeper.  (Tr. 22.)  This decision became the Commissioner's final decision when the

15   Social Security Appeals Council denied review. (Tr. 1-5.)

16                              **STANDARD OF REVIEW**

17        When reviewing a Social Security appeal, the Commissioner's decision must be

18   affirmed if it is supported by substantial evidence and he applied the correct legal standards.

19   See Batson v. Commissioner of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004);

20   Benton v. Barnhart, 331 F.3d 1030, 1035 (9th Cir. 2003). When reviewing the

21   Commissioner's factual determinations, acting through the ALJ, this Court will affirm if

22   there is substantial evidence supporting those determinations.  See Celaya v. Halter, 332 F.3d

23   1177, 1180 (9th Cir. 2003); Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  Substantial

24   evidence is more than a mere scintilla, but less than a preponderance.  See Howard ex rel.

25   Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003); Mayes v. Massanari, 276 F.3d 453,

26   459 (9th Cir. 2001).  Substantial evidence is relevant evidence which a reasonable person

27   might accept as adequate to support a conclusion based on the entire record.  Howard, 341

28   F.3d at 1011; Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

1  If the evidence can reasonably support either affirming or reversing the Commissioner's

2  conclusion, the Court may not substitute its judgment for that of the Commissioner.  See

3  Batson, 359 F.3d at 1193; McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002). The

4  ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and

5  for resolving ambiguities.  See Benton, 331 F.3d at 1040; Edlund v. Massanari, 253 F.3d

6  1152, 1156 (9th Cir. 2001).  The ALJ's determinations of law are reviewed de novo,

7  although deference is owed to a reasonable construction of the applicable statutes.  See

8  Edlund, 253 F.3d at 1156; McNatt v. Apfel, 201 F.3d 1084, 1087 (9th Cir. 2000).

9  **COMMISSIONER'S DISABILITY EVALUATION PROCESS**

10      To qualify for Social Security disability benefits, Wilson must demonstrate that he

11  suffers from a "medically determinable physical or mental impairment" that prevents him

12  from performing his prior work activities and any other substantial gainful employment that

13  exists in the national economy, and that the impairment "can be expected to result in death

14  or which has lasted or can be expected to last for a continuous period of not less than 12

15  months."  See 42 U.S.C. § 423(d)(1)(A).  Further, Wilson's disabled status must have existed

16  on or before the expiration of his disability insurance, often referred to as the date last

17  insured.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); Tidwill v. Apfel, 161

18  F.3d 599, 601 (9th Cir. 1998); Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453,

19  1459 (9th Cir. 1995).

20      Social Security regulations prescribe a five-step evaluation process for an ALJ to

21  determine if a claimant is disabled within the meaning of the Social Security Act.  See

22  Batson, 359 F.3d at 1190, 1194; 20 C.F.R. § 404.1520. At step one, the ALJ determines if

23  the claimant is presently engaged in substantial gainful activity.   See 20 C.F.R. §

24  404.1520(b). If the claimant is engaged in substantial gainful activity, then he is not disabled.

25  If not, the ALJ moves to step two to determine if the claimant has impairments or

26  combinations of impairments that significantly limit the claimant's physical or mental ability

27  to do basic work activities and are thus "severe" within the meaning of the regulation. See

28  id. § 404.1520(c).  At the third step, the ALJ evaluates if the claimant's impairment meets

1   or medically equals the criteria of a listed impairment found in Appendix 1 of Subpart P of

2   Regulation No. 404.  If yes, and the impairment meets the requirements for duration under

3   20 C.F.R. § 404.1509, the claimant is disabled.  If the claimant fails to meet or equal the

4   criteria or fails the duration requirement, the ALJ's analysis moves to step four.  See 20

5   C.F.R. § 404.1520(e).  Under step four, the ALJ determines the claimant's residual

6   functional capacity ("RFC"), which is the continued ability of the claimant to perform

7   physical or mental work activities despite his impairment or combination of impairments.

8   See id.  The ALJ also determines if the claimant's RFC allows him to perform past relevant

9   work.  See id. § 404.1520(f).  If yes, the claimant is not disabled.  If not, the analysis

10   proceeds to a fifth step where the burden shifts to the Commissioner to demonstrate that the

11   claimant is not disabled by presenting evidence the claimant retains sufficient RFC to adjust

12   to perform other jobs that exist in significant numbers either in the region where the claimant

13   lives or in several regions of the country.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §

14   404.1520(g).

15        In this case, Wilson's last insured date was March 31, 2007.  (Tr. 134.)   In

16   determining whether or not Wilson was disabled as of March 31, 2007, the ALJ moved

17   through steps one, two, and three, and determined at step four that Wilson had not

18   established that he was disabled.  The ALJ found that Wilson retained sufficient RFC to

19   perform his past relevant work as a bookkeeper.  (Tr. 18-22.)

20                                    **DISCUSSION**

21        Wilson claims that the ALJ erred by (1) failing to properly consider or weigh the non-

22   source medical opinion provided by his Psychiatric Nurse Practitioner Kim Leight; (2)

23   failing to set forth a detailed function-by-function RFC assessment of his work capacity,

24   erroneously utilizing categorical terms like "sedentary" as part of his RFC assessment and

25   failing to adequately consider and discuss his mental and physical impairments and

26   limitations as part of his RFC assessment; (3) failing to properly weigh Wilson's subjective

27   symptom testimony; (4) failing to properly weigh a third-party report; and (5) failing to

28   resolve factual conflicts in the testimony of the vocational expert.

**1. Non-Source Medical Opinion**

Wilson alleges that the ALJ failed to properly consider and weigh the non-source medical opinion provided by his Psychiatric Nurse Practitioner Kim Leight. (Doc. 13 at 21-24.) Wilson contends that his nurse practitioner provided mental impairment assessments that were not considered or weighed by the ALJ in determining the severity of his mental limitations as part of his step four RFC assessment. (Id.)

Subsequent to Wilson's date last insured, Ms. Leight assessed Wilson's mental impairments as they relate to his ability to perform work related activities. (Tr. 570-71, 769-70.) Ms. Leight completed two similar forms regarding Wilson's mental abilities. Among other things, she opined that Wilson had "moderately severe" limitations in relating to others; understanding, carrying out, and remembering instructions; responding appropriately to supervision; responding appropriately to customary work pressures; performing complex tasks; and performing varied tasks. Ms. Leight also opined that Wilson had "moderate" limitations in performing daily activities; responding appropriately to co-workers; performing simple tasks; and performing repetitive tasks. (Tr. 570-71, 769-70.) Wilson contends that the ALJ erred in failing to consider his limitations as part of his RFC assessment, citing 20 C.F.R § 404.1513(d) and Social Security Ruling ("SSR") 06-3p. (Doc. 13 at 23.)

Physician's assistants, nurse practitioners, chiropractors, and similar providers are medical professionals, but they are not considered "acceptable medical sources," under the Social Security regulations. See 20 C.F.R. § 404.1513(d)(1), 416.913(d)(1). Rather, these medical professionals are considered "other sources." Id. The distinction between "other sources" and "acceptable medical sources" is important because only evidence from an acceptable medical source can, (1) establish the existence of a medically determinable impairment; (2) provide medical opinions; and (3) be considered a "treating source." See 20 C.F.R. §§ 404.1502, 416.902. Thus, Ms. Leight's opinions as a nurse practitioner cannot be used to establish a medically determinable impairment for Wilson. Similarly, the opinions of Wilson's licensed social worker, Ms. Helene Rollins, cannot be used to establish

a medically determinable impairment. See SSR 06-03p, 2006 WL 2329939, at *2. Medical evaluations created and signed by medical professionals who are not considered "acceptable medical sources" under Social Security regulations are evaluated for issues such as "impairment severity and functional effects, along with the other relevant evidence in the file." See SSR 06-03p, 2006 WL 2329939, at *3.

The ALJ observed that in May 2004, Ms. Leight's treatment notes indicate that she believed Wilson had a mood disorder and rated Wilson's GAF[2] at 65, indicating only mild symptoms. (Tr. 19; see Tr. 281.) In review of Ms. Leight's continuing treatment notes, the ALJ reasonably found that Wilson's mood was fairly good. (Tr. 20; see, e.g., Tr. 290-93.) Although Ms. Leight did observe that Wilson's mood was "low" on one occasion between May 2005 and his March 31, 2007 date last insured (Tr. 289), she more often observed that his condition was stable, that his mood was "OK," and that his medication was "working well." (Tr. 287, 290-93; see also Tr. 288.) Similarly, Wilson's social worker, Ms. Rollins, repeatedly observed that Wilson's mental status was within normal limits, that his symptoms were improving, and that he was using skills learned in group therapy during his interactions with others. (See, e.g., Tr. 243-44, 246-51, 254-56, 260, 265-66, 269.)

Simply put, neither the record nor Ms. Leight's sparse notes support her later assessment regarding extreme limitations in mental functioning for Wilson. (Tr. 19-21.) Nor did Ms. Leight set forth a factual basis for her opinion on either assessment form that she completed for Wilson. (Tr. 570-71, 769-70.) See 20 C.F.R. § 404.1527(d)(3) (stating that the more a medical source presents relevant evidence to support an opinion, the more weight may be given to that opinion). On this basis, there was substantial evidence supporting the ALJ's decision to discount Ms. Leight's opinion that Wilson had moderately

---

[2]Global Assessment of Functioning ("GAF") ranks psychological, social, and occupational functioning on a hypothetical continuum of mental illness ranging from zero to 100. A GAF rating of 61 to 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well. See Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32 (Text Rev. 4th ed. 2000).

1    extreme limitations in mental functioning and not to include such limitations in Wilson's

2    step four RFC assessment.  Id. § 404.1527(d)(4) (evaluating a medical opinion based on

3    whether it is consistent with the record as a whole); cf. Magallanes v. Bowen, 881 F.2d 747,

4    755 (9th Cir. 1989) (recognizing that, "[a]s a reviewing court, we are not deprived of our

5    faculties for drawing specific and legitimate inferences from the ALJ's decision," and

6    finding an ALJ reasonably discounted a doctor's opinion where the ALJ summarized

7    conflicting facts, stated  his interpretation, and made findings).

8         Moreover, under SSR 06-03p, the ALJ was not under a mandate to discuss Ms.

9    Leight's opinion that Wilson had moderately extreme limitations in mental functioning.  See

10   2006 WL 2329939, at *5 ("there is a distinction between what an adjudicator must consider

11   and what the adjudicator must explain in the disability determination"); see also Howard,

12   341 F.3d at 1012 (recognizing that in interpreting the evidence and developing the record,

13   the ALJ does not need to discuss every piece of evidence).  However, the ALJ did have and

14   undertook his responsibility to resolve conflicts in the medical testimony, determine

15   credibility, and resolve ambiguities in the record evidence.  See Andrews v. Shalala, 53 F.3d

16   1035, 1039 (9th Cir. 1995).  When the evidence before the ALJ is subject to more than one

17   rational interpretation, the Court defers to the ALJ's decision.  Id. at 1039-40.  Here,

18   substantial evidence supports the ALJ's resolution of the record evidence, and the Court

19   defers to his rational interpretation of the evidence.

20        **2. RFC Assessment**

21        Next, Wilson alleges that the ALJ erred by failing to set forth a detailed

22   function-by-function RFC assessment of his work capacity.  (Doc. 13 at 15-16.)  Wilson

23   contends that instead of addressing specific work-related functions, the ALJ impermissibly

24   classified his RFC utilizing categorical terms like sedentary which is disallowed under Social

25   Security rules and regulations, citing SSR 96-8p.  (Id.)  Wilson alleges that the ALJ failed

26   to adequately consider and discuss his mental and physical impairments and limitations as

27   part of his RFC assessment. Specifically, Wilson contends that the ALJ failed to state how

28   many hours he could sit, stand, walk, and lift in an eight (8) hour day or to discuss his

1   problems with mood control in responding to supervisors and co-workers.  (Id. at 17.)

2       A claimant's RFC is "what an individual can still do despite his or her limitations."

3   SSR 96–8p, 1996 WL 374184 (July 2, 1996); 20 C.F.R. § 404.1545.  The assessment is

4   based upon all relevant medical and other evidence in the record and includes consideration

5   of the limitations caused by all of the claimant's impairments, including impairments which

6   are not "severe" as defined in the regulations. Id. at § 404.1545(a & e). The assessment

7   considers physical abilities such as sitting, standing, walking, lifting, carrying, pushing,

8   pulling, reaching, handling, stooping, and crouching; mental abilities such as understanding,

9   remembering, and carrying out instructions; responding appropriately to supervision,

10  co-workers, and work pressures; other abilities such as hearing and seeing; and the ability

11  to tolerate various work environments. Id . § 404.1545(b-d).  At the ALJ hearing level, it is

12  the ALJ's responsibility to assess RFC. Id. § 404.1546(c).

13      SSR 96–8p sets forth the Social Security Administration's policies and policy

14  interpretations regarding the assessment of RFC.  SSR 96–8p states that assessment of RFC

15  involves a function-by-function consideration of each work-related ability before expressing

16  the RFC in terms of the exertional categories of "sedentary," "light," and so forth.  The

17  failure to perform a function-by-function assessment may result in an improper finding at

18  step four regarding a claimant's ability to perform his past relevant work as he actually

19  performed it.  Id.  In evaluating whether a claimant satisfies the disability criteria, the

20  Commissioner evaluates the claimant's "ability to work on a sustained basis." Lester v.

21  Chater, 81 F.3d 821, 833 (9th Cir. 1996).  Moreover, because certain occupations do not

22  require the capacity to meet all the strength demands of the full range of work in a particular

23  exertional category, a failure to do a function-by-function assessment may result in improper

24  findings at step four regarding a claimant's ability to perform his past relevant work as it is

25  generally performed in the national economy.  Id.

26      The ALJ found at step four that Wilson did not carry his burden of demonstrating that

27  he suffers from a "medically determinable physical or mental impairment" that prevents him

28  from performing his prior work activities as a bookkeeper.  The ALJ found that during the

1    relevant period, "no treating or examining physician imposed limitations on the claimant's

2    residual functional capacity which prevented him from performing his past relevant work."

3    (Tr. 21.) During the administrative proceedings, State agency medical consultants Martha

4    Goodrich, M.D., Robert Estes, M.D., Alan Goldberg, Psy.D., and Randall Garland, Ph.D.,

5    all reviewed the record and opined that, through his March 31, 2007 date last insured,

6    Wilson had not established disability under agency regulations.  (Tr. 54-55, 306-19, 321,

7    527, 528-41.)  Based on his review of the record as a whole, the ALJ reasonably found that

8    Wilson retained the RFC to perform a full range of sedentary work.  (Tr. 21.) The ALJ's

9    RFC determination took into account whether Wilson had established exertional limitations

10   supported by the record evidence.  See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir.

11   2005) ("Preparing a function-by-function analysis for medical conditions or impairments that

12   the ALJ found neither credible nor supported by the record is unnecessary.").

13       Furthermore, the ALJ found that "the claimant had the residual functional capacity

14   to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a)." (Tr. 21).

15   This statement is not the use of a exertional term like "sedentary" proscribed by SSR 96-8p.

16   Rather, the ALJ found that Wilson was able "to perform the full range of sedentary work as

17   defined in 20 C.F.R. § 404.1567(a)."  (Tr. 21.)  Under that definition, the full range of

18   sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting

19   or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. 404.1567(a).  To

20   support his RFC assessment that Wilson had the ability to perform the full range of 20

21   C.F.R. 404.1567(a) work, the ALJ discussed at-length Wilson's allegations of disability,

22   symptoms, medical findings, and witness credibility.  (Tr. 18-23.)  Based on the record, the

23   ALJ found that as of March 31, 2007, Wilson was able to perform the physical exertional

24   requirements required by his former employment.

25       Regarding his mental RFC,  Wilson asserts that the ALJ failed to account for mental

26   limitations caused by his borderline personality disorder.  (Doc. 13 at 18-21.)  However,

27   substantial evidence supports the ALJ finding that Wilson only established depression as a

28   mental impairment.  (Tr. 18.)  As previously noted, only evidence from an acceptable

1   medical source can establish the existence of a medically determinable impairment. SSR 06-

2   03p, 2006 WL 2329939 at *2. Wilson's file does not support the finding that an acceptable

3   medical source diagnosed Wilson with borderline personality disorder. (Tr. 228.) Ms.

4   Leight's opinions as a nurse practitioner cannot be used to establish the existence of

5   borderline personality disorder as a medically determinable impairment. Further, the Court

6   has already discussed that there was substantial evidence supporting the ALJ's decision to

7   discount Ms. Leight's opinion that Wilson had moderately extreme limitations in mental

8   functioning and not to include such limitations in Wilson's step four RFC assessment. See

9   supra.

10   Next, Wilson contends that the ALJ erred as part of his RFC assessment in not listing

11   his headaches as a functional restriction arising out of this medically determinable

12   impairment. (Doc. 13 at 19.) Wilson alleges that he suffers from frequent and severe

13   migraine headaches. (Id.) Wilson further alleges that he needs to lie down when he gets a

14   migraine headache. (Id.)

15   With regard to Wilson's allegations of frequent severe migraine headaches,

16   substantial evidence supports the ALJ finding that claimant did not establish a functional

17   limitation. The record indicates that the headaches worsened significantly after Wilson's

18   March 31, 2007 date last insured.  (See Tr. 300; see also Tr. 226-27, 239, 300-01, 428.)

19   Claimant has the burden of proving that he became disabled prior to the expiration of his

20   disability insured status. See 20 C.F.R. § 404.131; Macri v. Chater, 93 F.3d 540, 543 (9th

21   Cir. 1996). Prior to his date last insured, Wilson acknowledged that, "he would experience

22   [headaches] on average of once or twice each month." (Tr. 300.) Wilson further

23   acknowledged that between the alleged onset of his disability and his March 31, 2007 date

24   last insured, he sought treatment for headaches only two occasions, in February and October

25   2006. (Doc. 13 at 3-6; see also Tr. 228-29, 486-87.) The record supports the finding that,

26   prior to his March 31, 2007 date last insured, Wilson's headaches responded to medication.

27   (See, e.g., Tr. 486-87.) Consequently, on this factual basis, substantial evidence supports the

28   ALJ finding that Wilson's headaches did not warrant a functional restriction.

1   The ALJ's RFC findings for Wilson were supported by substantial evidence.  The
2   ALJ adequately considered Wilson's mental and physical impairments and limitations as part
3   of his RFC assessment.

4   **3. Wilson's Subjective Symptom Testimony**

5   Wilson alleged that he could not work during the period from May 1, 2004 through
6   his date last insured, March 31, 2007 because of limitations and symptoms caused by his
7   impairments.  Wilson testified that his impairments prevented him from prolonged sitting,
8   standing, and walking, and limited his ability to lift and carry things. (Tr. 36-49.)  He also
9   testified to severe pain from migraine headaches, the frequency of these headaches being 3-4
10  times a week for the past 9-10 years, that they have gotten worse over time, and that he needs
11  to take medication, rest and lie down when a migraine headache occurs.  (Id.)  He testified
12  to his borderline personality disorder, how he is usually polite but can get angry at a
13  moment's notice.  (Id.)  Wilson contends that the ALJ erred by failing to set forth specific,
14  clear and convincing reasons to reject his testimony about the severity of his subjective
15  symptoms and how they preclude him from being able to work.  (Doc. 13 at 24-26.)

16  The ALJ resolved that Wilson's RFC allowed him to perform the full range of
17  sedentary work required by his previous work as a bookkeeper.  (Tr. 21-22.)

18  In evaluating the credibility of a claimant's testimony regarding subjective pain or
19  other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether
20  the claimant presented objective medical evidence of an impairment that could reasonably
21  be expected to produce some degree of the pain or other symptoms alleged; and, if so with
22  no evidence of malingering, (2) reject the claimant's testimony about the severity of the
23  symptoms only by giving specific, clear, and convincing reasons for the rejection. See
24  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009).  To support a lack of credibility
25  finding, the ALJ is required to point to specific facts in the record that demonstrate that
26  Wilson's symptoms are less severe than he claims.  Id. at 592. "Factors that an ALJ may
27  consider in weighing a claimant's credibility include reputation for truthfulness,
28  inconsistencies in testimony or between testimony and conduct, daily activities, and

unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." Orn v. Astrue, 495 F.3d 625, 636 (9th Cir.2007) (internal quotation marks and citations omitted).  Also, an ALJ may consider whether there was a specific consensus of medical opinion that the claimant, contrary to his alleged pain and limitations, retained the capacity to perform his past relevant work.  See Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).  However, if the ALJ failed to provide clear and convincing reasons for finding the claimant's alleged pain and symptoms not credible, the ALJ is required to include these limitations in his assessment of the claimant's RFC.  Lingenfelter, 504 F.3d at 1035.

In evaluating the credibility of Wilson's subjective symptoms the ALJ found a consensus of medical opinion in that no treating or examining physician imposed limitations on Wilson's RFC that prevented him from performing his past relevant work as a bookkeeper. (Tr. 21); see 20 C.F.R. § 404.1529(c)(1-3); see also Green v. Heckler, 803 F.2d 528, 531 (9th Cir. 1986) (finding it significant that no treating or consulting physicians concluded that the claimant was unable to work).  The ALJ also found that the objective medical evidence did not demonstrate that Wilson was unable to perform his past work during the period from May 1, 2004 through March 31, 2007, the date last insured. (Id.)

Further, the ALJ reasonably discounted Wilson's subjective statements, finding that Wilson's allegations of disabling limitations were inconsistent with his daily activities.  (Tr. 19-20.) Despite his allegedly disabling impairments, Wilson performed his own personal grooming, got his sons ready for school, took his sons to and from school, cared for the family pets, prepared meals, did laundry, mopped, vacuumed, performed household repairs, helped his sons with homework, spent significant time use on the computer (playing games, researching genealogy, and sending emails), played board games, played cards, collected stamps, handled the family's finances, performed household repairs, performed yard work (including mowing the lawn and trimming trees), drove a car with a manual transmission, attended church, went to the library, shopped for groceries and household goods, and played baseball and basketball with his nine-year-old son. (Tr. 43-45, 115-19, 146-50, 210, 243,

266, 373.)  Wilson also volunteered at the library, sold books on eBay, and performed accounts receivable work from his home. (Tr. 243, 260.)  Wilson's daily activities support the ALJ's finding that his limitations were not as disabling as he claimed.  See 20 C.F.R. § 404.1529(c)(3)(i) (stating that an ALJ must consider a claimant's activities in evaluating symptom testimony); Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009) (finding a claimant's active lifestyle and recent work activity clear and convincing reasons for discounting her subjective statements).  As discussed above, the ALJ reasonably determined that Wilson's subjective symptom testimony did not credibly establish work-related limitations contrary to the RFC adopted by the ALJ at step four.

### 4. Third-Party Report

Wilson argues that the ALJ failed to properly weigh the third party adult function report that his wife provided in support of his contention that he is not able to work. (Doc. 13 at 26.)

The disregard of the testimony of friends and family members is contrary to 20 C.F.R. § 404.1513(e)(2) (1991).  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987).  According to § 404.1513(e)(2), the Commissioner is required to consider observations by nonmedical sources about how impairments affect a claimant's ability to work.  More specifically, the Commissioner's Rulings require the ALJ to consider lay witness testimony in certain types of cases.  SSR 88-13 states that where a claimant alleges pain or other symptoms that are "not supported by medical evidence in the file, the adjudicator shall obtain detailed descriptions of daily activities by directing specific inquiries about the pain and its effects to . . . third-parties who would be likely to have such knowledge." SSR 88-13. The ruling then requires the ALJ to give "full consideration" to such evidence.  Id.  Having been directed to consider the testimony of lay witnesses in determining a claimant's disability, the ALJ can reject the testimony of lay witnesses only if he gives reasons germane to each witness whose testimony he rejects.  See Dodrill, 12 F.3d at 919.  The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay

1    witnesses who see the claimant every day is of particular value, see id. ("[a]n eyewitness can

2    often tell whether someone is suffering or merely malingering . . . this is particularly true of

3    witnesses who view the claimant on a daily basis. . . ."); such lay witnesses will often be

4    family members.

5          On June 10, 2007, Mrs. Wilson submitted her report.  (Tr. 146-53.)  Mrs. Wilson

6    claims that her husband's impairments cause pain, fatigue, and a need for him to take one

7    to two naps when a migraine headache occurs.  (Tr. 146.)  She also notes that her husband

8    is not able to go to his son's school events due to phonophobia and photophobia.  (Tr. 147.)

9    She states that her husband's conditions cause a decrease in pace and that it takes him a

10   whole day do minimal housework.  (Tr. 148.)

11         The ALJ discussed Mrs. Wilson's report, as follows: "The claimant's spouse

12   submitted a Third Party Adult Function Report which is not supported by the medical

13   evidence (Exhibit 10E).  Accordingly, the undersigned assigns little evidentiary weight to

14   the Third Party Statement." (Tr. 21.)  In this case, the Court has already discussed that the

15   medical evidence supports the fact that Wilson's migraine headaches did not exacerbate until

16   after his date last insured, March 31, 2007.  See supra; see also Bayliss, 427 F.3d at 1218

17   (finding that the ALJ reasonably discounted a lay witness statement which was inconsistent

18   with the medical evidence).  Consequently, substantial evidence supports the ALJ's

19   credibility determination regarding Mrs. Wilson's statement.

20         **5.  Testimony of the Vocational Expert**

21         Wilson argues that the decision of the ALJ contains legal error based on the ALJ's

22   failure to resolve a conflict in the testimony of the vocational expert.  (Doc. 13 at 27-28.)

23         At step four, the ALJ asked the vocational expert for his testimony regarding the work

24   of a bookkeeper, specifically discussing limited public contact and being able to work at

25   your own pace.  (Tr. 49-51.)  The vocational expert testified that the normal work of a

26   bookkeeper could accommodate limited public contact but it required pace because the

27   employee is not able to set their own schedule.  (Id.)  The vocational expert further testified

28   that a self-employed bookkeeper would be able to set their own pace and have limited social

contact, but that Wilson's prior work did not include such employment. (Id.) In the ruling, the ALJ finally determined that Wilson's RFC allowed him to perform his past relevant work as a bookkeeper. (Tr. 22.)

The Court concludes that substantial evidence supports the ALJ's resolution of Wilson's RFC and there is no legal error. The ALJ resolved Wilson's disability application at step four. According to SSR 00-4p, the Commissioner may use a vocational expert at step four to resolve complex vocational issues. See 2000 WL 1898704 at *2 (Dec. 4, 2000). However, the inquiry as to whether a claimant may perform his past relevant work does not require that the ALJ utilize vocational testimony. See Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996). It is the responsibility of the ALJ to determine a claimant's RFC. See 20 C.F.R. § 404.1546. The ALJ found Wilson's RFC as follows:

> Through the date he was last insured, the claimant was capable of performing his past relevant work as a bookkeeper, which the Dictionary of Occupational titles classifies as sedentary skilled work (SVP6). This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

(Tr. 22.)

It is the ALJ who is responsible for determining credibility and resolving ambiguities in the record. See Andrews, 53 F.3d at 1039. Based on the record evidence, the ALJ determined that Wilson's RFC allowed him to be able to return to his past relevant work. "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." Batson, 359 F.3d at 1198. This is so because "if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

## CONCLUSION

After a thorough review of the record, the Court finds that the ALJ applied the correct legal standards in his evaluation. The ALJ's decision demonstrates that he carefully considered Wilson's claim and the supporting evidence. The ALJ identified substantial evidence supporting each of his findings.

Accordingly,

1        **IT IS HEREBY ORDERED** that the Commissioner's decision denying Wilson's

2    application for disability benefits is **AFFIRMED**.

3        **IT IS FURTHER ORDERED** that the Clerk enter judgment in favor of Defendant

4    and terminate this action.

5        DATED this 9th day of July, 2012.

6

7

8                                                Stephen M. McNamee
                                              Senior United States District Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28